UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY MARTIN,

    Petitioner,

-v-                                        Case No. 8:18-cv-379-T-36JSS

FLORIDA, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Martin petitions for the writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court conviction for robbery. (Doc. 1) The respondent filed a response and an appendix with the state court record (Docs. 11, 13, and 20), and Martin replied. (Docs. 21-5 and 31) In his petition, Martin raises five grounds. (Doc. 1 at 4–12) In his reply, he abandons some of those grounds by stating: "Petitioner abandons claims one through three — and claim five — of his habeas corpus petition and replies only to ground four." (Doc. 31 at 1) Consequently, the district court addresses ground four.[1] The respondent concedes the timeliness of the petition (Doc. 11 at 5) and the exhaustion of ground four. (Doc. 11 at 27–29)

---

[1] In grounds one, two, and three, Martin asserted that trial counsel was ineffective for not impeaching a police officer with a photograph at a suppression hearing, for not challenging the trial court's finding based on that officer's testimony, and for not arguing that the prosecution failed to meet its burden at that hearing. (Doc. 1 at 4–8) The post-conviction court denied the claims as refuted by the record. (Doc. 13, Ex. 12 at 14–20) In ground five, Martin asserted that trial counsel was ineffective for not asking the trial court for a second competency hearing before withdrawing as

1

## FACTS[2]

On January 13, 2007, Martin went to a Bank of America, walked up to a teller, demanded "all of the money," said that he had a "Magnum" handgun, and threatened to shoot the teller and then himself. The teller gave him $7,246.00. Surveillance cameras at the bank recorded the robbery. The teller identified Martin as the robber in the surveillance video and in court.

Several weeks later, a police officer responded to a call for a domestic dispute. The officer spoke with a boyfriend and girlfriend who were fighting. The girlfriend went to a neighbor's home, and the boyfriend stayed with the officer. The boyfriend asked the officer to get his keys from his girlfriend. The officer walked to the neighbor's home, saw that the door was partially opened, knocked on the frame of the door, and said that he needed to get some keys. Someone inside said, "Come on in."

The officer walked inside and observed Martin sitting on the couch. The officer recognized Martin because earlier that day the officer had looked at photographs of another robbery at a Wachovia Bank.[3] The officer arrested Martin and turned him over to a detective investigating both robberies. After Martin's wife gave police consent to search the home, another police officer seized a sweater that the teller

---

counsel. (Doc. 1 at 11–12) The post-conviction court denied the claim as refuted by the record as well. (Doc. 13, Ex. 12 at 29)
   [2] The facts derive from the briefs on direct appeal and the state court record.
   [3] Martin represented himself at trial and opened the door to the admission of testimony and evidence relevant to this second robbery.

identified as the sweater that Martin wore during the Bank of America robbery. Also, the teller identified Martin in a photographic lineup prepared by the detective.

A jury found Martin guilty, and the trial court sentenced him to 15 years of prison which runs consecutively to a sentence in another case. (Doc. 13, Ex. 30 at 430–35) The state appellate court affirmed his conviction and sentence. (Doc. 13, Ex. 4) The post-conviction court denied his Rule 3.850 motion for post-conviction relief (Doc. 13, Exs. 8, 9, 12, and 14) and the state appellate court affirmed the denial of the motion. (Doc. 13, Ex. 19) Martin's timely federal petition follows.

## GOVERNING LEGAL PRINCIPLES

## AEDPA

Because Martin filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims. *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Clearly established federal law refers to the holding of a U.S. Supreme Court's opinion at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Williams*, 529 U.S. at 412 (italics in original). Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "This is 'meant to be' a difficult standard to meet." *LeBlanc*, 137 S. Ct. at 1728 (quoting *Richter*, 562 U.S. at 102).

A factual determination by the state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A federal habeas court may grant relief only if "in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state

4

court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016). A state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Consequently, "review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (applying *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* at 1192.

### Ineffective Assistance of Counsel

Martin asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To demonstrate prejudice the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 691. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. Because the standards under *Strickland* and AEDPA are both

highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

ANALYSIS

**Ground Four**

Martin asserts that trial counsel was ineffective for not calling Jason Vernador and Nancy Shaver as witnesses at a suppression hearing. (Doc. 1 at 9–10) He alleges that both witnesses were on his front yard when the police officer walked into his home and arrested him without a warrant. (Doc. 1 at 9) He contends that both witnesses would have testified that the police officer did not knock or announce his presence before entering his home, and no one else was inside the home to give the police officer consent to enter. (Doc. 1 at 9) He asserts that, if both witnesses had testified at the suppression hearing, the trial court would have granted his motion to suppress and dismissed the robbery charge. (Doc. 1 at 9–10)

The post-conviction court both denied the claim as facially insufficient because Martin did not allege that the witnesses were available to testify at the hearing and granted him an opportunity to amend the claim. (Doc. 13, Ex. 8 at 11–12) Martin filed an amended motion but the claim in the amended motion is identical to the claim in the initial motion. (Docs. 13, Ex. 6 at 46–48 and 20-2 at 47–49) Consequently, the

7

post-conviction court denied the claim in the amended motion with prejudice as facially insufficient. (Doc. 13, Ex. 9 at 10–12)

Martin moved for rehearing and contended that he did allege that the witnesses were available to testify on pages 47 and 48 of his amended motion. (Doc. 13, Ex. 12 at 22) The post-conviction court denied rehearing as follows (Doc. 13, Ex. 12 at 22) (state court record citations omitted):

> In his motion for rehearing, Defendant seeks rehearing on [the claim] because he alleged in pages 47 and 48 of his September 6, 2011 "amended 3.850 motion for post-conviction relief including defense exhibit appendix and memorandum of law" that they were available to testify. However, after reviewing pages 47, 48, and 49 of the September 6, 2011 amended motion, the January 6, 2012 order, the court file, and the record, the Court finds nowhere on pages 47, 48, or 49 of Defendant's September 16, 2011 amended motion does Defendant state that the witnesses were available to testify. Therefore, the Court finds it properly denied [the claim] with prejudice based on Defendant's failure to cure the facial deficiency in [the claim].

Martin moved for rehearing again and contended that either the clerk or court staff docketed an incorrect amended motion. (Doc. 13, Ex. 15 at 12–13) He again argued that he alleged that the witnesses were available to testify on pages 47 and 48 of his amended motion. (Doc. 13, Ex. 15 at 12) He explained that he presented the same amended claim in a second amended motion as well and asked the post-conviction court to reconsider the claim. (Doc. 13, Ex. 15 at 12–13)[4]

---

[4] In the second amended motion, Martin alleged that the witnesses were available to testify. (Doc. 13, Ex. 10 at 46–49) He filed the second amended motion after the post-conviction court denied the claim with prejudice.

8

The post-conviction court denied the second motion for rehearing as follows (Doc. 13, Ex. 16 at 3) (state court record citations omitted):

> In his motion for rehearing, Defendant alleges that the Court overlooked or misapprehended certain points in its orders denying relief. In his reply, Defendant contests the assertions and the attachments in the State's response. After reviewing the motion, the reply, the court file, and the record, the Court finds the August 30, 2011, January 6, 2012, July 30, 2012, and August 15, 2012 orders adequately refuted the allegations in Defendant's Rule 3.850 pleadings. As such, no rehearing is warranted.

Martin appealed (Doc. 13, Ex. 17) and argued that the post-conviction court erred by relying on an incorrectly docketed amended motion to deny the claim. (Doc. 13, Ex. 18 at 8–11) The state appellate court affirmed without a written opinion. (Doc. 13, Ex. 19)

In this federal action, Martin moved for an evidentiary hearing. (Doc. 27) He argued that the respondent provided the incorrect amended post-conviction motion in the appendix. (Doc. 27 at 2–3) He submitted a copy of the amended motion which contains the allegation that the witnesses were available to testify. (Doc. 27-3 at 50–53) He also submitted an unsworn handwritten letter from a woman named "Grandma Jean," who spoke with Vernador. (Doc. 27-5) Vernador told "Grandma Jean" what he observed just before police arrested Martin and said that the other witness Shaver — his wife — had died. (Doc. 27-5 at 1) The letter was dated August 6, 2016 — several years after the state post-conviction proceedings concluded. (Doc. 27-5 at 1)

9

Magistrate Judge Julie Sneed denied the motion for an evidentiary hearing as follows (Doc. 30 at 2–3):

> Upon consideration of this matter, Petitioner's request for an evidentiary hearing will be denied. Even if Petitioner was able to establish at an evidentiary hearing that the copy of the September 9, 2011 amended Rule 3.850 he provided to this Court (Doc. 27-3) is the motion that was actually received and docketed by the state court in September 2011, Ground Four of his petition still would not warrant habeas corpus relief. In Ground Four, Petitioner contends that his defense counsel was ineffective in failing to call Jason Vernador and Nancy Shaver to testify during the hearing on his motion to suppress (Doc. 1, p. 9). "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, 1996 WL 107279 at *3 (N.D. Cal. March 7, 1996), *affirmed*, 106 F.3d 408 (9th Cir.1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*.
>
> Petitioner has failed to present any evidence of actual testimony or an affidavit from either Jason Vernador or Nancy Shaver. Therefore, he only speculates on their proposed testimony and presents no evidence showing that they would have testified as Petitioner hypothesizes.

The state appellate court's unexplained decision (Doc. 13, Ex. 19) affirming the denial of the claim receives deference under Section 2254(d). *Wright v. Sec'y, Dep't Corrs.*, 278 F.3d 1245, 1254–56 (11th Cir. 2002). Martin has the burden to show no reasonable basis for the affirmance. *Richter*, 562 U.S. at 98. Because the unsworn

10

handwritten letter by "Grandma Jean" is dated after the state post-conviction proceedings concluded and was not part of the state court record, Martin cannot support his claim with the letter. *Pinholster*, 563 U.S. at 181–82; *Landers*, 776 F.3d at 1294–95.

Even if Martin sufficiently alleged the claim in state court, he did not support the claim with either an affidavit or deposition testimony to show that Vernador and Shaver would have testified in the manner that he contended. (Doc. 13, Exs. 6 at 46–48 and 10 at 46–49 and Doc. 27-3 at 46–49)  Because the claim was speculative, the state court did not unreasonably deny the claim. *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).

Even if Vernador and Shaver would have testified in the manner that Martin contended, the outcome at trial would not have changed.  In his motion to suppress, Martin alleged that a police officer entered his home without a warrant and unlawfully arrested him. (Doc. 13, Ex. 30 at 55–56) He asked the state court to suppress all fruits of the arrest including clothing, tennis shoes, photographs of Martin and a burn mark on his leg, currency, and statements that he made during an interview at the police station. (Doc. 13, Ex. 30 at 55–56, 73–74)

"An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980). A defendant is "not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt

11

through the introduction of evidence wholly untainted by the police misconduct." *Crews*, 445 U.S. at 474. "The question to be resolved when it is claimed that evidence subsequently obtained is 'tainted' or is 'fruit' of a prior illegality is whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Segura v. United States*, 468 U.S. 796, 804–05 (1984) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

At trial, overwhelming evidence not derived from Martin's arrest proved his guilt. Martin robbed the bank on January 13, 2007, and police arrested him on February 1. (Doc. 13, Ex. 30, Trial Transcripts at 68, 97–102) The bank teller testified that Martin demanded money from her, told her that he had a gun, and threatened to shoot her. (Doc. 13, Ex. 30, Trial Transcripts at 70–71) Martin's face was about two feet away from the teller, and the teller saw his face for five to seven minutes. (Doc. 13, Ex. 30, Trial Transcripts at 72–73) Based on that observation, the teller identified Martin as the robber in front of the jury. (Doc. 13, Ex. 30, Trial Transcripts at 76–79, 126–27) Surveillance cameras were installed behind the line at the teller, so that the cameras could record the face of each customer. (Doc. 13, Ex. 30, Trial Transcripts at 80) The prosecution showed the jury surveillance video and photographs of the robbery. (Doc. 13, Ex. 30, Trial Transcripts at 81–87) The teller identified Martin in the video and photographs. (Doc. 13, Ex. 30, Trial Transcripts at 84–87)

Instead of introducing currency at trial, the prosecutor presented testimony by a custodian of records at the bank who accounted for $7,246.00 that the bank lost from

12

the robbery. (Doc. 13, Ex. 30, Trial Transcripts at 95–96) A detective interrogated Martin and took photographs of the burn on his leg at the police station. (Doc. 13, Ex. 30 at 503–08) The trial court would not have suppressed this evidence obtained outside of his home, even if the police illegally arrested Martin inside his home. *New York v. Harris*, 495 U.S. 14, 21 (1990) ("We hold that, where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*[5]."). Even so, the prosecution did not introduce any of Martin's statements during the interrogation because he blamed his brother for the robbery. (Doc. 13, Ex. 30 at 285)

The prosecutor did introduce a sweater seized from Martin's home after his arrest. (Doc. 13, Ex. 30, Trial Transcripts at 115–16) The teller testified that Martin wore the sweater during the robbery. (Doc. 13, Ex. 30, Trial Transcripts at 74–75, 87) Also, the prosecutor introduced a photographic lineup with Martin's photograph taken just after his arrest.[6] (Doc. 13, Ex. 30, Trial Transcripts at 126–30) The teller identified Martin in that lineup as the robber. (Doc. 13, Ex. 30, Trial Transcripts at 75–79) Yet, other overwhelming evidence, including the teller's unobstructed, five-minute

---

[5] *Payton v. New York*, 445 U.S. 573, 576 (1980) (holding that "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.") (citations omitted).

[6] The record does not clearly show if the detective took the photograph of Martin for the photographic lineup inside his home or at the police station. (Doc. 13, Ex. 30 at 503–08) In a sworn post-judgment motion, Martin — who represented himself at trial — states that the photographic lineup contained his booking photograph from jail. (Doc. 13, Ex. 30 at 441–42, 447)

13

observation of Martin's face and the surveillance video and photographs, proved Martin's identity as the robber. (Doc. 13, Ex. 30, Trial Transcripts at 76–79, 84–87, 126–27) *Crews*, 445 U.S. at 471–72 ("[T]his is not a case in which the witness' identity was discovered or her cooperation secured only as a result of an unlawful search or arrest of the accused. Here the victim's identity was known long before there was any official misconduct, and her presence in court is thus not traceable to any Fourth Amendment violation.").

Even if the trial court had suppressed the sweater and the photographic lineup, Martin could not show that the outcome of the trial would have changed. *Strickland*, 466 U.S. at 694. Consequently, the state court did not unreasonably deny the claim.

In his reply, Martin argues that the post-conviction court unreasonably determined that his claim was facially insufficient. (Doc. 31 at 1–4) However, Martin moved for rehearing in state court and argued that the post-conviction court relied on an incorrectly docketed amended motion to deny his claim (Doc. 13, Ex. 15 at 12–13) and raised the same argument in his brief on appeal. (Doc. 13, Ex. 18 at 8–11) The state appellate court reviewed and rejected the claim in an unexplained decision. (Doc. 13, Ex. 19) Because the claim was meritless even if Martin had adequately alleged the claim, the state court did not unreasonably deny the claim. Ground Four is denied. *Richter*, 562 U.S. at 98.

It is therefore **ORDERED**:

1. The petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

14

2. The Clerk is directed to enter judgment against Martin and close this case.

3. Martin neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Consequently, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on March 8, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
All parties of record including unrepresented parties if any